UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **Lewis E. Wilkerson, Jr.** | ) | Case No. **20-34576-KLP** |
| | ) | |
| Debtor | ) | Chapter 11 |
| | ) | |
| | ) | |
| ROBERT E. DIXON, | ) | |
| Individually and Derivatively on | ) | |
| behalf of D.E.R. LLC, | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | Adversary Proceeding |
| | ) | |
| LEWIS E. WILKERSON, JR., | ) | No. 21- 03008- KLP |
| Debtor, | ) | |
| | ) | |
| Defendant | ) | |

**REBUTTAL EXPERT DISCLOSURE AND REPORT
BY ROBERT E. DIXON, PLAINTIFF, INDIVIDUALLY AND DERIVATIVELY**

Robert E. Dixon, Individually and Derivatively on behalf of D. E. R., LLC, by counsel, respectfully submits the attached Rebuttal Expert Disclosure and Report of Tonya D. Futrell, C.P.A., on behalf of the Plaintiff

    ROBERT E. DIXON,

    Individually and Derivatively, etc.

    By: /s/ W. R. Baldwin, III
        Of Counsel

W. R. Baldwin, III (VSB #16988)
Meyer Baldwin, Long & Moore, LLP
5600 Grove Avenue
Richmond, VA 23226
Voice: (804) 285-3338
Fax: (804) 285-7779
Counsel for the Plaintiff
Email: billbaldwin@meyerbaldwin.com

August 6, 2021

CASE 20-34576-KLP

Lewis E. Wilkerson, Jr. – Debtor
Robert E. Dixon on behalf of D.E.R. LLC – Plaintiff
Lewis E. Wilkerson, Jr. - Defendant

Rebuttal Expert Witness Disclosure and Report

1. Complete statement of all opinions the witness will express and the basis and reasons for them.
    a. Mr. Johnson bases his opinion on items contained in the Federal and State income tax returns of D.E.R. LLC for the years 2015 - 2018, as well as the financial statements of same entity for the years of 2012 – 2018.  Mr. Johnson may have also reviewed D.E.R. company financial information included in the QuickBooks records of the same entity.  It is my opinion that the financial statements, tax returns, and QuickBooks data cannot be relied upon as accurate or in accordance with proper accounting principles.

    The compiled financial statements are just that – compiled.  They are not reviewed or audited by Mr. Johnson.  Per professional guidelines and the accountant's compilation report, there is no opinion or assurance of any kind expressed on whether the financial statements are accurate and in accordance with a tax basis of accounting, or generally accepted accounting principles.  A compilation consists only of compiling raw financial data and presenting that data in a financial statement format such as a balance sheet and income statement.

    There are many obvious issues on the face of the compiled financial statements that affect their reliability as a model for justifying the way the company operated.

    The statements show a long term "loan" from Mr. Wilkerson to the company that increased every year by large amounts, around $100,000. There are no terms shown for this supposed loan. Payments supposedly attributable to this loan do not appear to be made on any set interval and the money appears to come in from this loan and go back out based on factors other than normal loan terms. Without this kind of information, I cannot as a matter of professional duty place reliance on this part of the financial statements. It gives the appearance that Mr. Wilkerson put in money and then took it out based on his personal wishes and not on any normal commercial standards.

    It is my opinion that the raw QuickBooks data also cannot be relied upon as there are numerous inconsistencies in treatment of financial transactions, deleted transactions, altered transactions, and general mistreatment of intercompany and partner loan transactions.  See attached summary of deleted and altered transactions within the D.E.R. LLC QuickBooks file.  Within the QuickBooks files of all three companies (WST, D.E.R. and BB&D), many of the altered and deleted transactions affected the intercompany loan account balances or the balance of the loan supposedly payable to Mr. Wilkerson.

Mr. Johnson's opinion is that the businesses were operated at an arm's length manner. It is my opinion that they were not operated in such manner. First, there are numerous instances in which funds are continuously transferred in and out of the business accounts for D.E.R. LLC, WST, and BB&D, the purpose of which is not known or clear. In many cases there were wire transfers from one entity account to another entity account, and, shortly thereafter, the funds were transferred to other bank accounts, one of which appears to be a personal account of Mr. Wilkerson. Second, I do not believe the so-called intercompany and Wilkerson loans were done in an arm's length manner. In order for these to be considered arm's length transactions and proper loans in accordance with accounting principles and the IRS tax code, they would need to be supported by repayment terms and stated interest rates. If there are no repayment terms, the loan could be deemed a demand loan, and in which case would still have a stated interest rate. If there is no stated interest rate, there would be an implied interest rate and for tax purposes the interest rate between related parties, including partner loans, should at least be an established rate per published applicable federal rates. In our analysis of the loan activity per the QuickBooks data, there is no consistency in repayments to Mr. Wilkerson and no interest expense or accrued interest recorded for these loans. There also does not appear to be any such interest reported on the related tax returns. In addition, some of the intercompany loan balances did not change from year to year (for example D.E.R. LLC's balance due from BB&D). This again indicates no repayment terms and there is no related interest income recognized. Therefore, these do not meet the standards of proper loan accounting.

In response to Mr. Johnson's opinion that D.E.R. LLC was paid for each timber hauling trip made, my opinion and analysis indicates that this is not the case. Our analysis of hauling trips, driver payroll records, and freight payments made show that there is between $481,220 (conservative estimate) and $625,586 (based on industry standard) for which D.E.R. LLC was not compensated during the time period of November 2017 – December 2019. We reviewed driver payroll records for November 10 – December 22 2017, all of 2018, and all of 2019 except for the week of December 6, 2019, which was not provided. Based on the actual rate/mile paid by WST during each year, unpaid trips totaled $485,408. Actual rates during the time period reviewed were:
- 2017 - $0.11/mile Nov – Dec.
- 2018 - $0.13/mile Jan – July and $0.10/mile Aug – Dec.
- 2019 - $0.10/mile Jan – Dec.

Based on the conservative rate of $0.10/mile (confirmed by Mr. Wilkerson's answer to interrogatory questions), unpaid trips totaled $481,220. Based on the industry standard rate of $0.13/mile (confirmed by Mr. Dixon), unpaid trips totaled $625,586. It is difficult to find any sort of fair or typical dealing in these numbers.

Per interrogatory answers and our review, there was a check from Key Truck & Equipment (check number 35156) payable to D.E.R. LLC dated May 30, 2018 in the amount of $133,000 for the purchase of two 2015 Western Star Tractors from D.E.R. LLC. There is no record of this check deposited into D.E.R. LLC's bank account. Per the interrogatory answer, Mr. Wilkerson confirmed that this was deposited into his personal bank account. Again, this indicates the businesses were not operated in accordance with appropriate accounting standards and not in an arm's length manner. He claims this was a loan repayment but there is no indication on the financial statement or bank

    record that this pay was in fact accounted for as he claims (I am not discussing whether this action would have been proper, just whether it is likely to actually have happened as he says). The amount owed to Mr. Wilkerson on his alleged D.E.R. loan balance per the financial statements increased from $728,021 EOY 2017 to $914,321 EOY 2018. This is a $186,000 increase in the loan principal in one year and if what he says is true, then the actual amount of the loan would have had to have been about $133,000 higher, or about $1,047,000 at the time of the supposed payment. I found no indication that any amount of money at that scale in cash was placed into the company that year that could fairly be attributable to Mr. Wilkerson.

    As a result, I conclude the $133,000 check from the sale of D.E.R. vehicles was converted by Mr. Wilkerson when he deposited this money into his personal account. Based on the sums of money involved it does not seem likely this was the result of a mistake and Mr. Wilkerson's interrogatory answer does not claim that it was a mistake.

    My opinions are based on information made available to us by attorney Will Seymour's office and Mr. and Mrs. Dixon through August 6, 2021. I reserve the right to update my opinions based on additional evidence and documents obtained in the future and upon hearing additional testimony.

2. Facts or data considered by the witness in forming them.
    a. QuickBooks file data for D.E.R. LLC, WST Products LLC, and BB&D Products LLC.
    b. Bank statements (including some but not all check copies) from 2005 – 2019 for D.E.R. LLC.
    c. Compiled financial statements of D.E.R. LLC for the years 2011 – 2018 prepared by Benjamin H. Johnson, CPA.
    d. Tax returns filed by D.E.R. LLC for the years 2012 – 2018 prepared by Benjamin H. Johnson, CPA.
    e. Copy of check number 35156 issued from Key Truck & Equipment payable to D.E.R. LLC dated May 30, 2018 in the amount of $133,000.
    f. D.E.R. LLC driver payroll records for the period November 2017 – December 2019.
    g. A selection of freight payments made to D.E.R. LLC from WST Products LLC for the period 2013 – 2019.
    h. The complaint in the Adversary Proceeding.
    i. The Answer in the Adversary Proceeding.
    j. Expert Disclosure of Benjamin H. Johnson, CPA and disclosure of Mr. Wilkerson.

3. Exhibits used to summarize or support opinions.
    a. Compensation analysis summary.
    b. Altered and deleted QuickBooks transaction reports.
    c. Summary of funds to and from D.E.R. LLC that affected the Loan due to Mr. Wilkerson account balance.
    d. Page 21 of 23 in interrogatory questions in which Mr. Wilkerson confirms conservative estimate of $0.10/mile.

4. Witness's qualifications, including a list of all publications authored in the previous 10 years.
    a. See attached resume.
    b. Publications – none.

5. List of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition.
    a. None

6. Statement of the compensation to be paid for the study and testimony in the case.
    a. Hourly rates ranging from $90 to $325, depending on staff or Partner level.

Respectfully,

　　　　/s/ Tonya D. Futrell, CPA
Tonya D. Futrell, CPA
Wells Coleman LLC

## **CERTIFICATE OF SERVICE**

I certify that a true copy of the foregoing pleading was served by the ECF procedures of this Court August 6, 2021 on all parties hereto subject to such procedures.

/s/ W. R. Baldwin, III

Mailed Copy:

Lewis E. Wilkerson, Jr.
PO Box 270
Keysville, VA 23947